.A. N. CRANMER *et. al.* v. J. C. WILLIAMSON, *County Treasurer, et al.*

(Filed Nov. 6, 1899.)

'TAXATION—*Excessive Levy—Pleading—Injunction.* Under section 6 of the Organic Act of the Territory of Oklahoma, property must be assessed in proportion to its value, and all taxes based upon that part of a valuation which is in excess of the true cash value of property is illegal, and injunction will lie to restrain the collection of that part of the tax which is invalid; and a petition which alleges that plaintiff's property was assessed at its "full cash value " before a raise of 75 per cent. by the territorial board of equalization was added thereto states a good cause of action, and is good as against a general demurrer.

(Syllabus by the Court.)

*Error from the District Court of Beaver County; before Bayard T. Hainer, District Judge.*

*S. H. Harris, Keaton & Kearful, J. Blanchard,* and *Dyke .Ballinger,* for plaintiffs in error.

*R. H. Loofbourrow,* for defendants in error.

Action by A. N. Cranmer and others against J. C. Williamson, county treasurer, and others. Judgment for -defendants, and plaintiffs bring error. Reversed.

·Opinion of the court by

BURWELL, J.: This is an action commenced by 350 ·taxpayers of Beaver county in the district court of that ·county to restrain the collection of all of that part of ·the tax which is based on the territorial raise for the

year 1897. The territorial raise for that year was 75 per cent. The plaintiffs allege in their petition that each of the plaintiffs is the owner of large amounts of real and personal property in the county of Beaver, in the Territory of Oklahoma, and subject to taxation in said county, upon and of which they have duly made return to the proper assessors of said county for assessment and taxation therein; that their said properties were, in the first instance, assessed at the full cash value thereof, and that thereafter the territorial board of equalization raised the assessed value of such property 75 per cent. To this petition the defendants demurred on two grounds, viz.: First that the court had no jurisdiction of the subject-matter of the action; and, second, that the petition does not state facts sufficient to constitute a cause of action. Upon the hearing of this demurrer the court overruled the same, to which ruling the plaintiffs excepted, and elected to stand upon their demurrer, and refused to plead further. Thereupon the court rendered judgments for the defendants. From this judgment the plaintiffs appeal to this court.

The first ground of the demurrer is not well taken. Under the former decision of this court there can be no doubt but that the district court had jurisdiction of the subject of the action. The district court acquired jurisdiction of the persons of the defendants when they voluntarily appeared and demurred to the petition, and the cause was the kind of a cause triable in the district court. Therefore the court had jurisdiction of both the persons of the defendants and of the subject of the action. (*Parker v. Lynch,* 7 Okla. 631, 56 Pac. 1064.)

We will now consider as to whether or not the petition stated a cause of action. This is the only other question in this case. This court has held in several cases that property should be assessed at its actual value, and we see no reason for changing the conclusion reached in our former decision. To our minds, there can be no doubt about the correctness of this conclusion. It is borne out by both the Organic Act of Oklahoma and our own statute. Section 6 of the Organic Act of Oklahoma provides that there shall be no unequal discrimination in taxing different kinds of property, and that all property subject to taxation shall be taxed in proportion to its value. We will notice a few of the different sections of the statutes of Oklahoma (1893) relating to revenue. Section 5580 provides that: "On or before the first day of January of each year, the territorial auditor, treasurer and attorney general shall provide for the use of the assessor, suitable notices and blank forms for the listing and assessments of all property, and such instructions as shall be needful to secure full and uniform assessments and returns, and forward the same to the county clerks, and such county clerks shall furnish the assessors with the same, together with such a list of all the entered land, in his county or district, subject to taxation. The list of taxable property assessed to each person shall contain: First. His lands," etc. "Second. His lots," etc. "Third. His right and title in any ferry franchise, toll bridge or part thereof, by the total and actual cash value of the same. Fourth. Amount of capital employed in merchandising or manufacturing, including all buildings, machinery and appurtenances thereto.   *   *   Fifteenth. All other

property not specially enumerated in this section by its actual cash value, except such as is specially exempted by section 2 of this chapter." Section 5596: " Depreciated bank notes and depreciated stocks or shares in corporations or companies may be listed at their current value and rate, credit shall be listed at such sums as the person listing them believes will be received or can be collected, and annuities at the value which the person listing believes them to be worth in money." Section 5603: " Every person, company or corporation owning, operating or constructing a railroad in this Territory, shall return sworn lists or schedules of the taxable property of such railroad as hereinafter provided.    Such property shall be listed and assessed with reference to the amount, kind and value on the first day of February of the year in which it is listed," etc.

And, again, in 1895, (Sess. Laws 1895, p. 224, sec. 2.) the legislature enacted a law requiring the board of railroad assessors to assess all the property of the railroads. and railroad corporations in the Territory of Oklahoma at its actual cash value.    Attention is also called to the    following    section,    found    in    the    Statutes. of    1893:    Paragraph    3    of    section    5579:    "Lands or    lots    shall    be    assessed    to    the    owner    thereof at their actual cash value on the first day of January of each year, and the owner on that day shall be liable for the tax of that year."    By section 5586 it is provided. that the assessor may place a value on property different from the one placed on it by the owner, if he is satisfied that the value given by the owner is not correct. Section 5587 provides the form of oath that shall be taken by the township assessor, and attached to the assessment.

roll.   In this oath the assessor is required to state that in every case where he had been required to ascertain the amount of value of the property of any person or body corporate, he has diligently, and to the best means in his power, endeavored to ascertain the true amount of value, and that, as he verily believes, the full value thereof is set forth in the returns to which the oath is attached.   Section 5588:  " If any person' shall wilfully make or give under oath or affirmation a false list of his, her or their taxable property, or a false list of the taxable property in the use or possession or under the control of him, her or them, and required by law to be listed by him, her or them, or place a false value thereon, such person shall be deemed guilty of perjury, and upon conviction thereof shall be punished therefor, as is by law provided for the punishment of perjury."    Section 5593:  " If any assessor or county commissioner shall enter into any contract, agreement or understanding with the owner or his agent of any personal property, whereby and pursuant to which such property is to be assessed at less than its cash value, in consideration that the owner or owners of such property shall remove or cause to be removed said property for the purpose of taxation into the county of said assessor or commissioner, such assessor or commissioner, and the owner of such property, and all persons aiding or abetting such corrupt transaction and agreement shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five hundred dollars, and by imprisonment in the county jail for not less than three nor more than six months."

We think it conclusively appears from these sections that the legislature intended that all property should be

assessed at its actual cash value, and we cannot understand how any one can consistently insist, in the face of these and other sections of our statutes and the Organic Act, that property need not be assessed at its actual cash value. It is true that the legislature did not point out each specific class of property, and say that it shall be assessed at its actual cash value, but it has said that certain classes of property shall be assessed at their actual " cash value," at their " full cash value," etc. The legislature certainly never intended, when it said that these different classes of property should be assessed at their actual cash value, that all other classes of property might be assessed below the true value thereof. It will be presumed, as a general rule, that when the legislature in a law includes one class, that all other classes are excluded, but the statutes before us cannot be thus construed. Instead of discriminating against certain classes of property, we think that the legislature desired to call special attention to the fact that bank stock, railroads, electric and telephone lines, real estate, franchises, etc., should be assessed at their true cash value the same as other property.

Uniformity in the assessment of all classes of property is what both congress and our own legislature have tried to give the people; and all property must, under the law in force, be assessed at its actual cash value; and so long as one is not called upon to pay taxes on a valuation in excess of the true value of his property, if the property was assessed by the proper officer. in substantially the way pointed out by law, he cannot invoke the aid of a court of equity. It is the duty of the assessor and different boards of equalization to see that each

individual, each township and city, and each county, pays his and its just proportion of the taxes, and that all property is assessed at its true cash value. But, while all property must bear its just proportion of the burdens of government, it can, in no event, be taxed on a valuation above its actual value.

The plaintiffs allege that their property was all assessed at its "full cash value" before the 75 per cent. raise was added on to the valuation of Beaver county by the territorial board of equalization. If this allegation is true,—and for the purpose of the demurrer it is admitted,—then the territorial raise is illegal as to each of plaintiffs, and they cannot be compelled to pay the taxes based on such raise.

From an inspection of the petition in this case we are of the opinion that several causes of action are improperly joined. (*Weber v. Dillion,* 54 Pac. 894, 7 Okla. 568.) But, as the demurrer does not raise this question, we will not consider it.

Other questions are discussed in the brief of plaintiffs in error, but we will not express an opinion thereon at this time, for the reason that the judgment of the lower court must be reversed.

As to the power of the territorial board of equalization to raise the valuation of any county, we entertain no doubt; but that board deals with all of the property of the county as a whole, and if, in raising the assessed valuation of a county, it raises the value of any individual's property above its true cash value, he may restrain the collection of all taxes, based on the valuation, above the true cash value of his property.

We think the petition stated a cause of action, and the demurrer should have been overruled. The judgment of the lower court is hereby reversed, and the case remanded, at the costs of the defendants in error, with directions that the lower court overrule the demurrer, and proceed further in accordance herewith.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.